UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| NATASHA MINNIFIELD and ELLA STEADMAN, | } } } } |
| Plaintiffs, | } } |
| v. | } CASE NO. 7:09-cv-2270-SLB } } |
| SOUTHEAST WAFFLES, LLC, | } } |
| Defendant. | } |

**MEMORANDUM OPINION**

This case is currently before the court on defendant Southeast Waffles, LLC's ("Southeast Waffles") Motion to Dismiss. (Doc. 8.)[1] Plaintiffs Natasha Minnifield ("Minnifield") and Ella Steadman ("Steadman") (referred to collectively as the "Plaintiffs") have filed suit against Southeast Waffles pursuant to 42 U.S.C. § 1981, alleging discrimination on the basis of race, and pursuant to the Fair Labor Standards Act ("FLSA"), alleging unpaid overtime wages. (Doc. 1 at ¶¶ 16-40.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Southeast Waffles' Motion to Dismiss, (Doc. 8), is due to be granted.

**I. MOTION TO DISMISS STANDARD OF REVIEW**

In addition to an assertion of the grounds for the court's jurisdiction and a demand for

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

relief, a pleading that states a claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules, the court must accept the factual allegations presented in the complaint as true and construe them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Supreme Court of the United States has explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 268 (1986) (internal citations omitted). In essence, then, the Court has held that a motion to dismiss must be denied when "[plaintiffs' claims] may be supported by showing any set of facts consistent with the allegations in the complaint." *See id.* at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (rephrasing and thereby broadening the "no set of facts" dismissal standard that was the Court's previous precedent in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, "[d]ismissal is appropriate 'when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *D.P. ex rel. E.P. v. Sch. Bd. of Broward County*, 483 F.3d 725, 728-29 (quoting *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *Acosta v. Campbell*, 309 F. App'x

315, 318 (11th Cir. 2009).

## II. FACTUAL AND PROCEDURAL HISTORY

Southeast Waffles is a limited liability company that, prior to its reorganization pursuant to Chapter 11 of the Bankruptcy Code, operated numerous Waffle House restaurants as a franchisee of Waffle House, Inc. (Doc. 1 at ¶ 4; Doc. 9 at 2-3 & n.5; Doc. 13 at 5 n.1.) On July 9, 2008, Minnifield began working for Southeast Waffles as a grill operator/cook. (Doc. 1 at ¶¶ 6-7.) Steadman began working for Southeast Waffles on January 14, 2009 as a waitress. (*Id.* at ¶¶ 11-12.)

On August 25, 2008, Southeast Waffles filed a voluntary Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Middle District of Tennessee.[2] (Doc. 9 at 3; Doc. 10 at Ex. A.) Thereafter, on February 26, 2009, the bankruptcy court entered an Expedited Order Setting Deadline for Current and Former Employees to File Proof of Claims. (Doc. 9 at 4-5; Doc. 10 at Ex. B.) The order imposed a May 1, 2009 deadline for filing claims against Southeast Waffles. (Doc. 10, Ex. B at ¶ 1.) To provide notice of the order, Southeast Waffles, on March 6, 8, and 11, 2009, distributed copies of the order, along with blank Proof of Claim forms, to all of its current employees, as well as all persons employed by Southeast Waffles within the previous three years. (*See id.* at ¶ 4, Ex. C at 1.) Plaintiffs received copies on March 8, 2009. (*Id.*, Ex. C at 41.)

---

[2] The underlying bankruptcy action remains pending in the Middle District of Tennessee. *See In re Southeast Waffles, LLC*, No. 3:08-bk-07552 (Bankr. M.D. Tenn. filed Aug. 25, 2008).

On or about September 26, 2009, Plaintiffs worked the 9:00 p.m. to 7:00 a.m. shift at Waffle House.[3]  (Doc. 1 at ¶ 18.)  Plaintiffs were the only two African American employees working the shift.  (*Id.* at ¶ 17.)  And, while Plaintiffs had repeatedly asked management for transfers to a different shift, management had denied their requests, despite granting similar requests of white employees with less seniority and experience.  (*Id.* at ¶¶ 19-20.)

A relatively new and inexperienced cook ("Greg") also worked the September 26, 2009 shift with Plaintiffs.  (*Id.* at ¶ 22.)  During the shift, Greg asked Minnifield if he could handle most of the customers' orders so as to build up his speed as a short-order cook.  (*Id.* at ¶23.)  Minnifield agreed to the request, but assured Greg that she could assist him as needed.  (*Id.* at ¶¶ 23-24.)

Plaintiffs claim that "there was simply not enough work to do after waiting on customers, cleaning up and prepping food," and so Plaintiffs "spent much of the shift outside talking with the security guard, as there were no customers."  (*Id.* at ¶¶ 25-26.)  At the end of the shift, management informed Plaintiffs that they were suspended and that they should not report to work on their next scheduled shift.  (*Id.* at ¶ 27.)  Management clarified that Plaintiffs were suspended pending an investigation into thirty-four pieces of missing sausage.  (*Id.*)  Plaintiffs contend that they have money deducted from their paychecks in order to eat certain food items while at work, including sausage.  (*Id.* at ¶ 28.)  Nevertheless, Plaintiffs also maintain they had nothing to do with the missing sausage, insisting that Greg and other

---

[3] As Southeast Waffles points out, "[i]t is unclear whether the shift . . . began or ended on September 26, 2009."  (Doc. 9 at 2 n.2.)

4

white co-workers had better access to the sausage during the shift. (*Id.* at ¶ 30.) Management did not suspend Greg, or any white co-workers, pending the investigation into the missing sausage. (*Id.*)

On September 28, 2009, Waffle House, Inc. filed a Modified First Amended Plan of Reorganization (the "Reorganization Plan"), which proposed that Waffle House, Inc. would create a new entity, Mid South Waffles, Inc. ("MSWI") to purchase substantially all of Southeast Waffles' assets. (Doc. 9 at 3-4; Doc. 10 at Ex. D.) The following day, on September 29, 2009, the bankruptcy court held a hearing to consider confirmation of the Reorganization Plan. (*See* Doc. 10 at Ex. E.) The bankruptcy court confirmed and approved the Reorganization Plan on September 30, 2009, entering an Order Confirming Chapter 11 Plan (the "Confirmation Order") on that day. (*Id.* at ¶ A; Doc. 9 at 4.)

The Confirmation Order set October 1, 2009 at 7:00 a.m. central standard time as the effective date for the Reorganization Plan (the "Effective Date"). (Doc. 10, Ex. E at ¶ B.) On the Effective Date, the Confirmation Order and Reorganization Plan required that Southeast Waffles terminate all of its employees. (*Id.* at ¶ C.(iv), Ex. D at ¶¶ 1.26, 9.4.) Then, with the exception of those specifically designated by Waffle House, Inc., MSWI would simultaneously offer employment at will to those previously terminated individuals. (*Id.*, Ex. D at ¶ 9.4, Ex. E at ¶ C.(iv).)

The Confirmation Order also provides that:

Except as otherwise provided in the [Reorganization] Plan or in this Confirmation

Order, this Confirmation Order operates as a discharge, pursuant to Section 1141(d)[4] of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims[5] of any nature whatsoever against, [Southeast Waffles] and MSWI that arose at any time prior to the Effective Date . . . . Without limiting the generality of the foregoing, on the Effective Date, [Southeast Waffles] and MSWI will be discharged from any Claim or debt that arose prior to the Confirmation Date . . . regardless of whether (a) a proof of claim based on such debt was filed pursuant to Bankruptcy Code Section 501,[6] (b) a Claim based on such debt is an Allowed Claim pursuant to Bankruptcy Code Section 502, or (c) the holder of a Claim based on such debt has voted to accept the [Reorganization]

---

[4] § 1141(d), the pertinent section of the Bankruptcy Code regarding the effect of confirmation, provides that:

**(1)** Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan–
 **(A)** discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h), or 502(i) of this title, whether or not–
  **(i)** a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
  **(ii)** such claim is allowed under section 502 of this title; or
  **(iii)** the holder of such claim has accepted the plan; and
 **(B)** terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d).  Although the other subsections of § 1141(d) provide exceptions to the general rule set out in subsection (d)(1), none are applicable here.  (*See* Doc. 10, Ex. E at ¶¶ 4, 19, 23.)

[5] The Reorganization Plan, expressly confirmed and approved of by the Confirmation Order, defines the term "claim" as:

(i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(Doc. 10, Ex. D at ¶ 1.10, Ex. E at ¶ A.)  Relatedly, under the Bankruptcy Code, "[t]he term 'debt' means liability on a claim."  11 U.S.C. § 101 (12).

[6] § 501 of the Bankruptcy Code, in pertinent part, states simply that "[a] creditor or an indenture trustee may file a proof of claim."  11 U.S.C. § 501(a).

> Plan. As of the Effective Date, except as otherwise expressly provided in the [Reorganization] Plan or the Confirmation Older [sic], all persons and entities, including all holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against [Southeast Waffles], MSWI or any of its respective successors and assigns, or the assets or properties of any of them, any other or further Claims, debts, rights, causes of action, remedies, liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the [Reorganization] Plan. In accordance with the foregoing, except as specifically provided in the [Reorganization] Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other debts and liabilities against [Southeast Waffles], pursuant to Bankruptcy Code Sections 524 and 1141, and such discharge will void any judgment obtained against [Southeast Waffles], at any time, to the extent that such judgment relates to a discharged Claim, liability or debt holders of Administrative Claims or Post Petition Trade Debt Claim that do not file an application or other Bankruptcy approved pleading by appropriate bar date will be forever barred from asserting such Claim against [Southeast Waffles], [MSWI] or any of their respective properties.

(Doc. 10, Ex. E at ¶ N.) And, the Confirmation Order further dictates that:

> Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the [Reorganization] Plan, as of the Confirmation Date, except as otherwise provided in the [Reorganization] Plan or in the Confirmation Order, all Persons or entities that have held, currently hold or may hold a Claim . . . that is discharged pursuant to the terms of the [Reorganization] Plan are permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims . . . [including] commencing or continuing in any manner any action or other proceeding against the Debtor, MSWI or their respective parties.

(*Id.* at ¶ O.) Finally, the Confirmation Order makes clear that "until this case is closed," the United States Bankruptcy Court for the Middle District of Tennessee "shall retain the fullest and most extensive jurisdiction of this case that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the [Reorganization] Plan are carried out." (*Id.* at ¶ F.)

7

In accordance with the Reorganization Plan and Confirmation Order, Southeast Waffles terminated all of its employees, including Plaintiffs, on the Effective Date. (*Id.* at ¶ C.(iv); Doc. 9 at 4) Thereafter, it seems that MSWI did not offer employment to Plaintiffs. (*See* Doc. 1 at ¶¶ 10, 15; Doc. 10, Ex. E at ¶ C.(iv); Doc. 9 at 5-6, 12.) However, Plaintiffs contend they were fired on October 6, 2009. (Doc. 1 at ¶¶ 10, 15.)

Following their termination, on November 6, 2009, Plaintiffs filed suit against Southeast Waffles. (*See id.*) In the Complaint, Plaintiffs allege two counts against Southeast Waffles, including Count I, which alleges discrimination on the basis of race pursuant to 42 U.S.C. § 1981, and Count II, which alleges unpaid overtime pursuant to the FLSA. (Doc. 1 at ¶¶ 16-40.) In response, on December 17, 2009, Southeast Waffles filed a Motion to Dismiss pursuant to Rule 12(b)(6). (Doc. 8.) With its motion, Southeast Waffles also filed an accompanying Memorandum in Support, as well as a Notice of Filing Evidentiary Materials, which attached seven exhibits in support of the motion.[7] (*See* Doc. 9; Doc. 10.) Thereafter, Plaintiffs filed their Opposition to Defendant's Motion to Dismiss on January 12, 2010. (Doc. 12.) Then, on January 26, 2010, Southeast Waffles filed their Reply Brief in

---

[7] Although Southeast Waffles attached the seven exhibits in support of a motion to dismiss under Rule 12(b)(6), which would generally require that the court convert the motion to one for summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d), all of Southeast Waffles' attached exhibits are copies of filings from the underlying bankruptcy action, undisputed in terms of authenticity, and central to Plaintiffs' claims, (*see* Doc. 10 at Exs. A-G). For that reason, the court need not convert the motion to dismiss to one for summary judgment. *See, e.g.*, *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (noting that a court need not convert a 12(b)(6) motion to dismiss to a motion for summary judgment when considering a document outside the four corners of the complaint if the document is "central to the plaintiff's claims and is undisputed in terms of authenticity" (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

Support of its Motion to Dismiss. (Doc. 13.) The court held oral argument on the motion on February 23, 2010.

### III. DISCUSSION

In their Memorandum in Support of their Motion to Dismiss, Southeast Waffles primarily maintains that Plaintiffs' Complaint is due to be dismissed under Rule 12(b)(6) "because the claims were discharged in bankruptcy and are barred by the doctrine of res judicata." (Doc. 9 at 2.) Southeast Waffles similarly argues that "Plaintiffs' claims were . . . released in the [Reorganization Plan] and waived when Plaintiffs did not object to Confirmation or appeal the Confirmation Order." (*Id.*) Finally, Southeast Waffles adds that, "[t]o the extent Plaintiffs state a claim for wrongful termination, they have sued the wrong party." (*Id.*)

In response, Plaintiffs initially concede that their FLSA claims are barred by res judicata. (Doc. 12 at 1.) Specifically, they acknowledge that "[b]ecause the violations of the FLSA were present as of May 1, 2009 [i.e. the deadline for current and former employees of Southeast Waffles to file proof of claims], and ongoing in nature, it is appropriate to dismiss Count Two of their Complaint." (*Id.*) Southeast Waffles' Motion to Dismiss, (Doc. 8), is therefore due to be granted as to Count II of Plaintiff's Complaint.

Nevertheless, Plaintiffs assert that their § 1981 claims state valid claims upon which relief can be granted, properly alleging discrimination on the basis of race against Southeast

9

Waffles.[8]  (*Id.* at 2.)  To state a claim for race discrimination under § 1981, "plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) (citing *Rustein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000)).

In the instant case, Plaintiffs assert that their § 1981 claims are valid, arguing that "[Southeast Waffles] terminated Plaintiff[s] on October 6, 2009," and did so because of their race.  (Doc. 12 at 2.)  Plaintiffs insist that "[Southeast Waffles'] argument that a blanket termination occurred pursuant to the bankruptcy plan on September 30, 2009 is merely a legal description with no substantive change in reality."  (*Id.*)  Instead, Plaintiffs argue that "[their] employment simply changed in its corporate/fictional ownership," but that "[t]he restaurant location, the decision-makers, and the witnesses see no more change than the address on their paycheck."  (*Id.*)

---

[8] § 1981 states in pertinent part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Subsection (b) clarifies that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* § 1981(b).

Despite the fact that Plaintiffs may well be correct in arguing that "[their] employment merely changed in its corporate/fictional ownership," (*id.*), it remains undisputed that their employment status indeed changed on October 1, 2009, the Effective Date, pursuant to the Confirmation Order, (Doc. 10, Ex. E at ¶ C.(iv)). To be sure, on the Effective Date, Southeast Waffles terminated all of its employees without exception, as required by the Confirmation Order. (*Id.* at ¶¶ B, C.(iv).) What's more, the Confirmation Order made clear that "no further action by any party" was necessary for the termination to take place. (*See id.* at ¶¶ C, C.(iv).) In essence, then, the termination occurred by operation of law. For that reason, it is undisputed that Southeast Waffles terminated Plaintiffs' employment for a wholly nondiscriminatory reason, i.e. court order. (*See id.* at ¶ C.(iv).) Therefore, to state a valid claim for race discrimination under § 1981, the discrimination concerning Plaintiffs' employment contracts must be viewed as occurring either: prior to the Effective Date, i.e. on or about September 26, 2009, when Southeast Waffles suspended Plaintiffs pending an investigation into thirty-four pieces of missing sausage, on the Effective Date, i.e. when MSWI elected not to offer employment at will to Plaintiffs pursuant to the Confirmation Order, or after the Effective Date, i.e. October 6, 2009, when Plaintiffs allege they were actually terminated. (*See* Doc. 1 at ¶¶ 10, 15, 27; Doc. 10, Ex. E at ¶¶ B, C.(iv).) The court will address each scenario in turn.

First, to the extent that Plaintiffs allege the discrimination concerning their employment contracts occurred on October 6, 2009, the date Plaintiffs allege they were terminated, Southeast Waffles is correct that Plaintiffs "have sued the wrong party." (*See*

11

Doc. 9 at 2, 11-12.) As of the Effective Date, Southeast Waffles was no longer Plaintiffs' employer by operation of the Confirmation Order. (Doc. 10, Ex. E at ¶¶ B, C.(iv).) Thus, the only entity that could have terminated Plaintiffs on October 6, 2009 was MSWI, which is not a party in this case. (*See id.*) Next, to the extent that Plaintiffs allege the discrimination concerning their employment contracts occurred on the Effective Date, when MSWI presumably elected not to offer employment at will to Plaintiffs, Plaintiffs have again sued the wrong party, as the decision to not offer them employment was made by MSWI or Waffle House, Inc., not Southeast Waffles. (*See id.*) So, to state a claim against Southeast Waffles, the only defendant in this case, the court must assume that Plaintiffs allege the discrimination concerning their employment contracts occurred on or about September 26, 2009, when Southeast Waffles suspended Plaintiffs' employment. (*See* Doc. 1 at ¶ 27.)

In that Southeast Waffles suspended Plaintiffs on or about September 26, 2009, prior to the Effective Date, the issue arises whether the Confirmation Order discharged Plaintiffs' claims. (*See id.*; *see* Doc. 10, Ex. E at ¶¶ C, I, N.) Southeast Waffles, pointing to the Confirmation Order's plain language, argues that Plaintiffs' claims were clearly discharged on the Effective Date. (Doc. 9 at 10-11; Doc. 13 at 2.) On the other hand, Plaintiffs assert that Southwest Waffles' argument elevates technicality over substance, and that such an approach is unreasonable because Plaintiffs' suspensions occurred only days prior to the bankruptcy court's hearing to consider confirmation of the Reorganization Plan. (Doc. 12 at 2.) For all that, the court finds that resolution of the dischargeability issue is, at this time, beyond this court's jurisdiction.

To be sure, in a related context, the Eleventh Circuit has recognized that "the 'bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings.'" *Finova Capital Corp. v. Larson Pharmacy, Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) (quoting *In re Rach House of Orange-Brevard, Inc.*, 773 F.2d 1166, 1168 (11th Cir. 1985)); *see also In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) (stating that "the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." (citing *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir. 1987))). *Woodson v. Robintech, Inc.*, a case out of the Eastern District of Louisiana, is analogous to the instant case. *See* 69 B.R. 77, 78 (E.D. La. 1986). In *Woodson*, the plaintiff had filed suit against a defendant corporation in district court, alleging violations of his civil rights under Title VII, § 1981, and § 1985. *Id.* Thereafter, a Petition in Involuntary Bankruptcy was filed against the same defendant corporation in the United States Bankruptcy Court for the Northern District of Texas. *Id.* The bankruptcy court later converted that action into a Chapter 11 Reorganization, and the district court entered an order staying the civil rights action pending the bankruptcy proceedings. *Id.* The plaintiff did not file a claim with the bankruptcy court despite notice of the proceedings, and, for that reason, his civil rights claims were not included in the corporation's reorganization plan. *Id.* Following confirmation of the reorganization plan by the bankruptcy court, the plaintiff filed a motion to lift the stay imposed by the district court. *Id.* The district court, however, recognized that the plaintiff's claims involved conduct occurring prior to the bankruptcy court's entry of the confirmation

13

order, and therefore subject to it. *See id.* The district court then stated that "[t]he bankruptcy procedure is designed to bring claims against a debtor into one common forum and thereby provide fair treatment to the debtor and his creditors." *Id.* (citing *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982))). Furthermore, the district court pointed out that "[t]he Bankruptcy Court has exclusive jurisdiction to adjudicate the dischargeability of debts and claims, and the scope of such a discharge." *Id.* For that reason, the district court denied plaintiff's motion, recognizing that it lacked jurisdiction over the underlying issue. *Id.*

Here, similar to *Woodson*, Plaintiffs' claims against Southeast Waffles involve conduct that occurred prior to the Effective Date, and are therefore subject to the Confirmation Order. (*See* Doc. 1 at ¶ 27; Doc. 10, Ex. E at ¶¶ C, I, N.) But, rather than appeal the Confirmation Order in the bankruptcy case, which indeed remains pending and has retained exclusive jurisdiction to decide such issues, (*see* Doc. 10, Ex. D at 46-48, Ex. E at ¶ F), Plaintiffs filed the instant Complaint, (Doc. 1). Because resolution of the Complaint's underlying issues would require that this court first determine whether the Confirmation Order discharged Plaintiffs' claims, and because the bankruptcy court has properly retained jurisdiction to make such determinations, this court declines to decide the issue at this time. Therefore, Southeast Waffles' Motion to Dismiss, (Doc. 8), is due to be granted as to Count I of Plaintiffs' Complaint.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that Southeast Waffles' Motion to Dismiss, (Doc. 8), is due to be granted. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this 1st day of June, 2010.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE